IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: LAND CONSERVANCY OF ELKINS PARK, INC., | CIVIL ACTION NO. 12-1653 |
| LAND CONSERVANCY OF ELKINS PARK, INC., Appellant, | BANKRUPTCY NO. 10-19522 |
| v. | ADVERSARY NO. 10-499 |
| THE DOMINICAN CONGREGATION OF SAINT CATHERINE de' RICCI, *et al.*, Appellees. | |

## MEMORANDUM OPINION

**RUFE, J.**                                                                                           **FEBRUARY 11, 2013**

Debtor-Appellant Land Conservancy of Elkins Park, Inc. appeals from the Bankruptcy Court's Order dated February 21, 2012. For the following reasons, and having considered fully the briefs and the record on appeal, and determined that oral argument is not necessary in this case,[1] the Court will affirm the order of the Bankruptcy Court.

**I. BACKGROUND**

On November 1, 2010, Debtor filed voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code[2] in the Bankruptcy Court for the Eastern District of Pennsylvania.[3] On November 30, 2010, Debtor initiated an adversary proceeding against Defendant/Appellee the Dominican Congregation of Saint Catherine de' Ricci ("the

---

[1] Fed. R. Bankr. P. 8012.

[2] 11 U.S.C. §§ 701-784.

[3] Bankr. E.D. Pa. Petition No. 10-19522, Doc. No. 1.

Congregation"), concerning real property located at 1750 Ashbourne Road in Elkins Park, Pennsylvania ("the Property"), which Debtor purchased from the Congregation.[4] Debtor and the Congregation reached a settlement of the adversary proceeding in April 2011.[5] However, Debtor defaulted under this initial settlement agreement and the Congregation retained ownership of the property.

Following this default, the parties continued their attempts to resolve the dispute without litigation and on December 9, 2011, Debtor filed a motion on behalf of Debtor and the Congregation, requesting that the Bankruptcy Court approve a second settlement ("Revised Settlement" or "Revised Settlement Agreement").[6] On December 22, 2011, after a hearing on the motion, the Bankruptcy Court approved the Revised Settlement, which required Debtor to pay the Congregation $300,000 by December 31, 2011.[7] Debtor failed to make this payment. On January 18, 2012, Debtor filed a motion to vacate the December 22, 2011 Order approving the Revised Settlement and the Congregation filed a motion for relief from the automatic stay to permit it to file an action to eject Debtor from the property.[8] The Bankruptcy Court held a hearing on both motions on February 15, 2012, and on February 21, 2012, the Bankruptcy Court entered an order denying Debtor's motion to vacate and granting the Congregation's motion for relief from the stay.[9] Debtor has appealed, seeking review of this February 21, 2012 Order.[10]

---

[4] Bankr. E.D. Pa. Adversary Proceeding No. 10-499, Doc. No. 1.

[5] Bankr. No. 10-499, Doc. No. 70.

[6] Bankr. No. 10-499, Doc. No. 79.

[7] Bankr. No. 10-499, Doc. No. 84.

[8] Bankr. No. 10-499, Doc. No. 86; Bankr. No. 10-19522, Doc. No. 266.

[9] Bankr. No. 10-499, Doc. Nos. 93, 94; Bankr. No. 10-19522, Doc. Nos. 299, 303.

[10] Bankr. No. 10-499, Doc. No. 96; Bankr. No. 10-19522, Doc. No. 308.

## II. JURISDICTIONAL STATEMENT

Bankruptcy courts have jurisdiction to hear and determine all core proceedings under Title 11 of the United States Code.[11] An adversary proceeding which concerns, *inter alia*, administration of the estate, property of the estate, and dischargeability of particular debts is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), and (I); the Bankruptcy Court had jurisdiction under these sections. This Court has jurisdiction under 28 U.S.C. § 158(a) to consider Debtor's appeal from the final order of the Bankruptcy Court entered February 21, 2012.[12]

## III. STANDARD OF REVIEW

A district court reviewing the decision of a bankruptcy court on appeal "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."[13] The Court reviews the bankruptcy court's "legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof."[14] "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."[15] A finding of fact is "clearly erroneous" when it is "completely devoid of minimum evidentiary support displaying some hue of credibility or bears

---

[11] 28 U.S.C. §§ 157(b)(1) and (b)(2).

[12] Bankr. No. 10-499, Doc. No. 94; see also Bankr. No. 10-19522, Doc. No. 303. It is undisputed that Debtor's appeal, filed March 6, 2012, is timely. See 28 U.S.C. § 158(c)(2); Fed. R. Bankr. Proc. 8002.

[13] Fed. R. Bankr. Proc. 8013.

[14] In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999).

[15] Fed. R. Bankr. Proc. 8013.

3

no rational relationship to the supporting evidentiary data."[16] "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts." [17]

A district court's review of a bankruptcy appeal is limited to the record before the bankruptcy court.[18] In its recitation of the facts, Debtor fails to cite to the record in this case and some of the facts stated are not evident from the record. This Court considers only those facts that can be gleaned from the record before the Bankruptcy Court.

## IV. STATEMENT OF FACTS

On February 23, 2009, Debtor purchased the Property from the Congregation for a total purchase price of $8,500,000.[19] The Congregation provided financing to Debtor for the purchase in an aggregate principal amount of $6,900,000, which was secured by a promissory note and mortgage on the property.[20] Debtor failed to make timely payments and as a result on November 1, 2010, the Congregation recorded a Deed in Lieu of Mortgage Foreclosure on the Property.[21] That same day Debtor filed its voluntary Chapter 11 petition.[22] Debtor initiated an adversary proceeding against the Congregation on November 30, 2010.[23]

---

[16] Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340 (3d Cir. 2002) (quoting Hoots v. Pennsylvania, 703 F.2d 722, 725 (3d Cir. 1983)).

[17] Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods., 310 F.3d 118, 122 (3d Cir. 2002) (quoting In re O'Brien Envtl. Energy, Inc., 188 F.3d at 122) (internal quotation marks omitted).

[18] In re Stone Resources, Inc, 482 F. App'x 719, 722-23 (3d Cir. 2012) (citing Nantucket Investors II v. Cal. Fed. Bank, 61 F.3d 197, 210 n. 19 (3d Cir. 1995)).

[19] Bankr. No. 10-19522, Doc. No. 284 at 6.

[20] Bankr. No. 10-499, Doc. No. 79 ¶¶ 4, 5.

[21] Bankr. No. 10-499, Doc. No. 79 ¶¶ 6, 7.

[22] Bankr. No. 10-19522, Doc. No. 1.

[23] Bankr. No. 10-499, Doc. No. 1.

As stated, the parties reached a settlement of the adversary proceeding in April 2011, and then the Revised Settlement, which was approved by the Court on December 22, 2011, and required Debtor to make a $300,000 payment to the Congregation by December 31, 2011.

At the time of the initial settlement agreement, Debtor contemplated securing a loan from Atlantic Rim Fund, a Bankruptcy Court approved lender, and using loan proceeds to satisfy its obligations to the Congregation under the initial settlement agreement.[24] Atlantic Rim, however, failed to fund the loan and this failure caused Debtor to default under the initial settlement.[25] Debtor's ability to make payments under the Revised Settlement was contingent upon Atlantic Rim's returning a $600,000 deposit to Debtor,[26] but, the Revised Settlement Agreement did not make the December 31, 2011 payment obligation contingent upon the return of this deposit.[27]

Atlantic Rim failed to return Debtor's $600,000 deposit, and Debtor defaulted on the December 31, 2011 payment. Debtor requested that Bankruptcy Court vacate its December 22, 2011 Order approving the Revised Settlement, arguing *inter alia*, that performance under the Revised Settlement was rendered impossible by the "unforeseen" refusal of Atlantic Rim to return the deposit. At the same time, the Congregation moved for relief from the stay so that it could file an action to eject Debtor from the property.[28] After a hearing on both motions, the Bankruptcy Court entered an order denying Debtor's motion to vacate and granting the Congregation's motion for relief from the stay.[29]

---

[24] Bankr. No. 10-499, Doc. No. 79 ¶ 12.

[25] Bankr. No. 10-499, Doc. No. 79 ¶ 13.

[26] Bankr. No. 10-499, Doc. No. 94 at 4 n.2.

[27] Id.

[28] Bankr. No. 10-499, Doc. No. 86; Bankr. No. 10-19522, Doc. No. 266.

The Bankruptcy Court found that given Atlantic Rim's history of nonperformance, "there was a known risk of default that necessarily had to be within the contemplation of the parties."[30] The Revised Settlement Agreement did not address this foreseeable risk, making the doctrine of impossibility/impracticability inapplicable.[31] Debtor assumed the risk of its inability to perform caused by Atlantic Rim's default. The Bankruptcy Court therefore concluded that there was no basis for vacating its December 22, 2011 Order and granted the Congregation's motion for relief from the stay to enforce the terms of the Revised Settlement.

Debtor has appealed, seeking review of the Bankruptcy Court's February 21, 2012 Order denying its Motion to Vacate.[32] Debtor argues that that the Bankruptcy Court erred in holding that the doctrine of impracticability/impossibility did not apply.[33]

## V. DISCUSSION

"Under Pennsylvania law, a party's obligations may be discharged by a 'supervening impracticability' 'where after the contract is made, a party's performance is made impracticable without his fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged,

---

[29] Bankr. No. 10-499, Doc. Nos. 93, 94; Bankr. No. 10-19522, Doc. Nos. 299, 303.

[30] Bankr. No. 10-499, Doc. No. 94 at 4 n.2.

[31] Id.

[32] Bankr. No. 10-499, Doc. No. 96; Bankr. No. 10-19522, Doc. No. 308.

[33] In this appeal, Debtor raises an additional issue regarding the automatic stay. However, the parties acknowledge that this issue has been rendered moot by the Bankruptcy Court's dismissal of the related bankruptcy proceedings. See Doc. No. 14.
  The Bankruptcy Court also considered an issue regarding the enforceability of the Revised Settlement Agreement which was never signed. The Bankruptcy Court held that the Revised Settlement Agreement was enforceable notwithstanding the absence of a signature because the terms of the Agreement were presented to the Bankruptcy Court for approval on a motion, filed by Debtor, to approve this Agreement, and the Agreement was approved only after a hearing on the motion held on December 15, 2011, during which Debtor assented to the terms of the Agreement. See Bankr. No. 10-499, Doc. No. 94 at 3 n.1. However, Debtor appears to have abandoned this issue of appeal as Debtor has not included the issue in its statement of issues on appeal and has not briefed.

6

unless the language or the circumstances indicate to the contrary.'"[34] Pennsylvania courts have adopted this doctrine of impracticability or impossibility as set forth in the *Restatement (Second) on Contracts* § 261. Under this doctrine, the general rule that "a party assumes the risk of his own inability to perform his duty" under a contract, gives way based on unforeseeable circumstances which prevent contract performance.[35]

"In order for a supervening event to discharge a duty under this Section, the non-occurrence of that event must have been a 'basic assumption' on which both parties made the contract. . . . Its application is also simple enough in the cases of market shifts or the financial inability of one of the parties. The continuation of existing market conditions and of the financial situation of the parties are ordinarily not such assumptions, so that mere market shifts or financial inability do not usually effect discharge under the rule stated in this Section."[36] However, "[t]he fact that the event was foreseeable, or even foreseen, does not *necessarily* compel a conclusion that its non-occurrence was not a basic assumption."[37] Illustration 2 contained in Comment b to § 261 explains the doctrine's applicability in cases such as this one:

> 2. A contracts to produce a movie for B. As B knows, A's only source of funds is a $100,000 deposit in C bank. C bank fails, and A does not produce the movie. A's duty to produce the movie is not discharged, and A is liable to B for breach of contract.[38]

This illustration is directly applicable to the present case and supports the Bankruptcy Court's conclusion that Atlantic Rim's failure to return Debtor's deposit did not excuse Debtor

---

[34] Prusky v. Reliastar Life Ins. Co., 445 F.3d 695, 700-01 (3d Cir. 2006) (quoting Luber v. Luber, 614 A.2d 771, 774 (Pa. Super. Ct. 1992) (quoting Restatement (Second) of Contracts § 261)).

[35] Restatement § 261 cmt. e.

[36] Restatement § 261 cmt. b.

[37] Id. (emphasis added).

[38] Restatement § 261 cmt. b, Illustration 2.

7

from performing under the Revised Settlement Agreement. Moreover, given Atlantic Rim's failure to perform in the past, its failure to perform in this instance was foreseeable.[39] In fact, at the December 15, 2011 Hearing on the Motion to Approve the Revised Settlement, Debtor acknowledged that Atlantic Rim's failure to pay was a possibility.[40] Accordingly, the Court concurs with the finding of the Bankruptcy Court that given the factual context of this case, the doctrine of impracticability does not apply so as to excuse Debtor's performance under the contract.[41]

**VI. CONCLUSION**

For the foregoing reasons, the Court will affirm the February 21, 2012 Order of the Bankruptcy Court, denying Debtor's Motion to Vacate the December 22, 2011 Order approving the Revised Settlement Agreement.

An order will be entered.

---

[39] Debtor argues that "[i]t simply was not foreseeable that the Debtor's Court approved escrow agent would commit a fraud." Doc. No. at 11. However, even assuming the nonpayment was fraudulent the fraud is not the operative foreseeable event. The operative event is the nonpayment, and as stated, this event was foreseeable.

[40] 12/15/11 Hr'g Tr. 12-14, Bankr. No. 10-499, Doc. No. 89.

[41] To the extent Debtor argues that the fact that the contract here involves land somehow changes this analysis, his argument is misplaced. While the doctrine certainly may apply to a contract involving land and although in certain cases the fact that real estate is unique may affect application of the doctrine, neither of these facts affect applicability in this case where nonperformance is a result of the financial inability of the Debtor rather that the condition of the land. See generally West v. Peoples First Nat'l Bank & Trust Co., 106 A.2d 427, 431-32 (Pa. 1954).